```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3    UNITED STATES OF AMERICA,

 4                 Plaintiff,          Case No. 22-20264-2
         -v-
 5
      CHAZ DUANE SHIELDS,
 6
                      Defendant.
 7    _____/

 8                         PLEA HEARING

 9         BEFORE THE HONORABLE ROBERT H. CLELAND
                United States District Judge
10                    Federal Building
                      526 Water Street
11                   Port Huron, Michigan
                      August 23, 2022
12
      APPEARANCES:
13
      FOR THE PLAINTIFF:    RYAN A. PARTICKA
14                          U.S. Attorneys Office
                            211 West Fort Street, Suite 2001
15                          Detroit, MI 48226

16    FOR THE DEFENDANT:    JONATHAN EPSTEIN
                            30445 Northwestern Highway
17                          Suite 225
                            Farmington Hills, MI  48334-3167
18

19
              To Obtain a Certified Transcript Contact:
20    Christin E. Russell, RDR, CRR, FCRR, CSR - (248) 420-2720
            Proceedings produced by mechanical stenography.
21      Transcript produced by computer-aided Transcription.

22

23

24

25
```

<u>TABLE OF CONTENTS</u>

<u>Hearing</u>                                                      <u>Page</u>

  Defendant Sworn                                          6


<u>Exhibits:</u>
            (None Offered.)


  CERTIFICATE OF REPORTER                                  39

1    Port Huron, Michigan

2    August 23, 2022

3    10:21 a.m.

4         (Call to Order of the Court; all parties present.)

5

6              *         *         *

7         THE CLERK:  Calling case No. 22-20264, Defendant 2,

8    United States of America vs. Chaz Duane Shields.  Counsel,

9    please state your appearances for the record.

10        MR. PARTICKA:  Good morning, your Honor.  Ryan

11   Particka on behalf of the United States.

12        MR. EPSTEIN:  Your Honor, good morning.  Jonathan

13   Epstein, standing in for Arthur Weiss on behalf of Chaz

14   Shields.

15        THE COURT:  And this is a substitution this morning in

16   view, I understand, of Mr. Weiss's unavailability?

17        MR. EPSTEIN:  Correct.  Mr. Weiss has a funeral in the

18   family and is not able to attend today, but he does not wish to

19   delay or adjourn the proceedings.  So Mr. Shields has consented

20   to my appearing on Mr. Weiss's behalf.

21        Is that correct?

22        THE DEFENDANT:  Yes.

23        THE COURT:  And you know of course, Mr. Shields, we

24   could wait for Mr. Weiss to become available.  It would just

25   mean some additional delay, but that's another alternative.  Do

1    you understand that, Mr. Shields?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And you wish to proceed with Mr. Epstein?

4              THE DEFENDANT:  Yes.

5              THE COURT:  You've already had a thorough discussion

6    with Mr. Weiss, I would imagine, have you not?

7              THE DEFENDANT:  No.

8              THE COURT:  Well, I asked that in an odd way.  You've

9    had a thorough discussion about the Rule 11 with your attorney?

10             THE DEFENDANT:  I wasn't able to talk to my attorney

11   about the agreement yet, not with Mr. Weiss.  I spoke with him,

12   yes.  You said Mr. Weiss.

13             THE COURT:  Are you satisfied with your discussion

14   with Mr. Epstein then?

15             THE DEFENDANT:  Correct.

16             THE COURT:  And do you think he answered your

17   questions and helped you to understand the agreement?

18             THE DEFENDANT:  Yes.

19             THE COURT:  And you're ready to proceed with Mr.

20   Epstein representing you then?

21             THE DEFENDANT:  Yes.

22             MR. EPSTEIN:  Judge, may I expand on that just

23   briefly?

24             THE COURT:  Yes, certainly.

25             MR. EPSTEIN:  Thank you.  So I arrived at the

```
 1    courthouse early this morning and I met with Mr. Shields in the
 2    lockup.  And we reviewed the Rule 11.  The Rule 11 had
 3    previously, previously been mailed to Mr. Shields by Mr. Weiss.
 4    And so there has been an opportunity to read it and review it.
 5    And then we reviewed it again this morning.  And in fact, on
 6    behalf of Mr. Shields, two changes have been made to the Rule
 7    11.  And those have -- and one has been initialed and the other
 8    change I'm going to place on the record.  So I just want the
 9    Court to be apprised of that, as well.
10             THE COURT:  All right.  Mr. Particka, are you
11    satisfied with the detail provided here with respect to Mr.
12    Epstein's assistance in the case?
13             MR. PARTICKA:  With one addition, your Honor.  I would
14    note for the record that Mr. Epstein previously represented
15    another defendant in this case, Brittany Witherspoon, when the
16    matter was charged on complaint.  Ms. Witherspoon has now been
17    charged via information as of yesterday.  She has different
18    counsel and has had different counsel for approximately seven
19    months now.
20             The Government has no objection to Mr. Epstein
21    representing Mr. Shields for purposes of today, but I want the
22    record to be clear that Mr. Epstein does have prior knowledge
23    with respect to a different defendant, albeit prior knowledge
24    from a much earlier stage of the case.
25             MR. EPSTEIN:  That is correct, your Honor.  I did
```

```
 1   represent Ms. Witherspoon several months ago on a complaint.  I
 2   have not represented her on the information.
 3         I did review that with Mr. Shields this morning.  And
 4   Mr. Shields consents to me standing in for Mr. Weiss this
 5   morning.
 6         THE COURT:  Is all of that correctly stated, Mr.
 7   Shields?
 8         THE DEFENDANT:  Yes.
 9         THE COURT:  You're comfortable proceeding with Mr.
10   Epstein then, I take it?
11         THE DEFENDANT:  Yes, for this procedure.
12         THE COURT:  All right.  Then in order to proceed with
13   the proposed change of plea, I'll have to have the defendant
14   sworn.  So please raise your right hand as well as you can.
15     (Defendant sworn, 10:27 a.m.)
16         THE COURT:  Mr. Shields, I'm going to need to question
17   you about your decision to enter a plea of guilty here, to
18   change your plea and about the case, about your involvement in
19   the case and so forth.  You're under oath so it's important
20   that you remember to speak truthfully in answering my
21   questions.  You do fundamentally know that, don't you?
22         THE DEFENDANT:  Yes.
23         THE COURT:  If you say something under oath that you
24   know is not true, you could be charged with committing perjury,
25   which is lying under oath.  And if that were to happen, things
```

```
 1    that you say here could be used against you in such a

 2    prosecution.  You understand that important angle of being

 3    under oath?

 4             THE DEFENDANT:  Yes.

 5             THE COURT:  Please state your full name.

 6             THE DEFENDANT:  Chaz Shields.

 7             THE COURT:  And you have no middle name; is that

 8    right?

 9             THE DEFENDANT:  Yeah, Duane.

10             THE COURT:  All right.

11             MR. EPSTEIN:  Speak up.

12             THE COURT:  How old are you, Mr. Shields?

13             THE DEFENDANT:  Thirty-one.

14             THE COURT:  What kind of education do you have?  In

15    other words, how far did you go in school?

16             THE DEFENDANT:  To college.

17             THE COURT:  You have some college.  Do you have a

18    college degree or some college credits?

19             THE DEFENDANT:  Yes.

20             THE COURT:  A college degree?  In what?

21             THE DEFENDANT:  Credits.

22             THE COURT:  College credits in what field of study?

23             THE DEFENDANT:  Criminal justice.

24             THE COURT:  So you must read and write English and

25    understand it fundamentally, do you?
```

1          THE DEFENDANT:  Correct.  Yes.

2          THE COURT:  And you understand me so far as I'm

3    explaining these things --

4          THE DEFENDANT:  Yes.

5          THE COURT:  -- to you this morning, yes?

6          THE DEFENDANT:  Yes.

7          THE COURT:  If there is anything that I say that you

8    don't hear clearly or you need repeated or that you need

9    explained perhaps, you just need to ask me to do that, to go

10   over it again, repeat whatever it is that you had a problem

11   hearing, and ask me to clarify things for you.  You understand

12   that I want you to speak up if you are having a problem, in

13   other words, right?

14         THE DEFENDANT:  Yes.

15         THE COURT:  As you stand here this morning, are you

16   feeling the negative effect or the intoxicating effect, Mr.

17   Shields, of any alcohol, drugs, including prescription drugs or

18   anything similar to that, that could affect your thinking?

19         THE DEFENDANT:  No.

20         THE COURT:  You believe you're thinking clearly and

21   adequately this morning, do you?

22         THE DEFENDANT:  Yes.

23         THE COURT:  You're not being treated by any medical or

24   mental health professionals currently, are you?

25         THE DEFENDANT:  No.

```
 1               THE COURT:  So you're not taking any prescribed
 2   medication?
 3               THE DEFENDANT:  No.
 4               THE COURT:  And you feel totally awake and alert and
 5   clear-headed this morning, do you?
 6               THE DEFENDANT:  Yes.
 7               THE COURT:  Mr. Epstein, do you agree?
 8               MR. EPSTEIN:  I do.
 9               THE COURT:  I find the defendant is thinking clearly
10   and not intoxicated and ready to proceed based on what's been
11   presented here in court this morning.
12               Now, you have the right to have an attorney represent
13   you, Mr. Shields, during all stages of the proceedings.  The
14   Court appoints an attorney for you to serve at public expense,
15   as here, if you're not able to afford an attorney of your own
16   choosing.  You do understand that?
17               THE DEFENDANT:  Yes.
18               THE COURT:  And you've discussed this case completely
19   with one or, one or the other or both of the attorneys that are
20   representing you; is that correct?
21               THE DEFENDANT:  Yes.
22               THE COURT:  Most recently, you've discussed the Rule
23   11 agreement in its final form with Mr. Epstein this morning,
24   right?
25               THE DEFENDANT:  Yes.
```

```
 1              THE COURT:  Are you confident that you understand the
 2    advice you've received from attorneys?
 3              THE DEFENDANT:  Yes.
 4              THE COURT:  Are you confident you've listened
 5    carefully to the advice that you've received and thought about
 6    it in making a decision to plead guilty?
 7              THE DEFENDANT:  Yes.
 8              THE COURT:  Are you confident that the decision to
 9    plead guilty is your own decision and not just what an attorney
10    has, perhaps has recommended to you?
11              THE DEFENDANT:  Yes.
12              THE COURT:  So this is something that you will call
13    your own decision.  You own this decision, so to speak.  Is
14    that a correct statement?
15              THE DEFENDANT:  Correct.
16              THE COURT:  If I accept your guilty plea, you will be
17    convicted of the crime to which you intend to admit.
18              And where is the indictment?
19        (Brief pause.)
20              THE COURT:  We may have to rewind the proceedings here
21    to a certain extent.  There is a Second Superseding Information
22    that I have just had printed.  Do I understand there is also a
23    third superseding or is this the most recent?
24              MR. PARTICKA:  This is the most recent, your Honor,
25    the Second Superseding.
```

```
 1              THE COURT:  All right.
 2              MR. PARTICKA:  There are no changes to the document in
 3   any respect as to Mr. Shields.  The only addition is the
 4   addition of defendant number 3, Brittany Witherspoon to Count 1
 5   of the indictment -- or the information.  Apologies, your
 6   Honor.
 7              THE COURT:  The defendant intends to change his plea
 8   as to Count 1 and Count 2 of the Second Superseding
 9   Information.  And that would be --
10              MR. EPSTEIN:  Your Honor, do you want the parties to
11   write "second superseding" in writing and initial?
12              THE COURT:  That's probably a good idea for clarity's
13   stake.
14              So Count 1 is conspiracy to commit wire fraud.  So is
15   this the -- the original apparently is in my hand.  It needs to
16   be initialed; is that right?
17              THE CLERK:  Yes, Judge.
18              THE COURT:  Counsel, could you come and take care of
19   initialling your assent to the second superseding.
20        (Brief pause.)
21              THE COURT:  All right.  The phrase "second
22   superseding" has been inserted in what appears to be the
23   appropriate place.
24              So back to you, Mr. Shields, you apparently intend to
25   change your plea as to Count 1, conspiracy to commit wire
```

 1    fraud, and Count 2, conspiracy to commit mail fraud.  Is that a

 2    correct statement?

 3              THE DEFENDANT:  Yes.

 4              THE COURT:  If I accept your guilty plea, you will be

 5    convicted of the crimes to which you are pleading guilty today,

 6    and you will not have a trial.  Do you understand that?

 7              THE DEFENDANT:  Yes.

 8              THE COURT:  There are constitutional rights you would

 9    have at a trial, but you are giving them up in this case by

10    pleading guilty.  And I need to make sure that you understand

11    the rights that you are giving up.

12              First, you're giving up the right to continue with a

13    plea of not guilty and to have a trial by jury with a lawyer

14    assisting you.  Do you understand you're giving that up?

15              THE DEFENDANT:  Yes.

16              THE COURT:  You're giving up the right to be presumed

17    innocent, that is the right to have the Government prove that

18    you are guilty beyond a reasonable doubt based upon the

19    evidence in the case.  Do you understand you're giving that up,

20    Mr. Shields?

21              THE DEFENDANT:  Yes.

22              THE COURT:  Third, you're giving up the right to watch

23    and listen as the witnesses against you testify and the right

24    to confront those witnesses, that is, to question them or to

25    challenge their testimony.

1          THE DEFENDANT:  Yes.

2          THE COURT:  You understand that.  And you also

3    understand you're giving up the right to have the court order

4    any additional witnesses that you may have in your own defense

5    to come into court and give testimony if you wish to present a

6    case.  Do you understand you're giving that up as well?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Fourth and finally, you're giving up the

9    right to watch and listen -- sorry.  That's the same as number

10   three.

11         Number four, you are giving up the right to choose

12   whether to testify or to remain silent during trial.  If you

13   wish to testify, you may.  If you do not wish to testify at

14   trial, you cannot be required to do so.  You understand you're

15   giving up that right by entering a plea of guilty on this Rule

16   11 plea agreement, Mr. Shields?

17         THE DEFENDANT:  Yes.

18         THE COURT:  And elsewhere within the document, within

19   the Rule 11 agreement, you're giving up two procedural rights,

20   one of which is to appeal your conviction based on this plea.

21   And secondly, you're giving up the right to appeal your

22   sentence as long as I sentence you in accords with the way your

23   sentence has been estimated or recommended in the Rule 11

24   agreement.

25         So what that means is if I accept your plea of guilty,

1    Mr. Shields, your guilty plea and the conviction will be

2    permanent, not suitable to be challenged.  You're giving up the

3    right to challenge in it virtually any way possible.  And

4    you're giving up the right to challenge the actual sentence

5    that you receive, as long as it is a predictable sentence, that

6    is within the terms set forth, and yet to be summarized here on

7    the record by the Assistant U.S. Attorney.

8            So no appeal of the conviction, no appeal of the

9    sentence.  You're giving things up by entering a plea of guilty

10   per your agreement.  You understand that?

11           THE DEFENDANT:  Yes.

12           THE COURT:  No questions?

13           THE DEFENDANT:  No.

14           THE COURT:  All right, sir.  There is one other issue

15   that you're giving up.  Generally speaking, a person has to be

16   charged by grand jury indictment to face a felony charge in

17   federal court.  There is one -- there is a way of giving up the

18   right to be charged by grand jury indictment, and that is to

19   agree to be charged through an information.  And that is what

20   we have here.  You have given up your right to grand jury

21   indictment.  You are agreeing to be charged with Count 1 and

22   Count 2 in the Second Superseding Information.  You understand

23   you're giving that up, sir?

24           THE DEFENDANT:  Yes.

25           THE COURT:  And you've agreed and signed off on that

 1    in an earlier documentation; is that correct, sir?

 2              THE DEFENDANT:  Correct.

 3              THE COURT:  The crime of conspiracy, which applies to

 4    Count 1 and Count 2, has certain things that are required to be

 5    true in order for a person to be guilty.

 6              Fundamentally, if a person knows that there is a

 7    conspiracy in existence or about to be formed, and that person

 8    joins the conspiracy by agreeing with at least one other person

 9    to attempt, or attempt and succeed in committing a federal

10    felony, and he does so knowingly, then that person is guilty of

11    conspiracy, whether or not the crime intended to be committed

12    was ever successfully completed or not.  Do you understand the

13    basics there, Mr. Shields?

14              THE DEFENDANT:  Yes, I do.

15              THE COURT:  And as to wire fraud, Count 1, the

16    underlying crime which the conspiracy was aimed would require

17    there to be a scheme or pretense of some sort to obtain money

18    or property to which the conspirators are not entitled by the

19    means of false pretenses or statements which were capable of

20    deceiving a person who received such information and statements

21    and promises.

22              The means of telecommunication known as wire

23    communication, which would include Internet capability, radio,

24    television, telephone, and similar forms of communication would

25    have to be in some fashion in order to make the wire fraud

1    federal, that is, in and affecting interstate commerce.  Do you

2    understand those things, Mr. Shields?

3              THE DEFENDANT:  Yes.

4              THE COURT:  The charge of mail fraud is the same.  The

5    concept of conspiracy is the same.  A person who engages in a

6    conspiracy or forms a conspiracy or agrees to join a conspiracy

7    aimed at the commission of mail fraud is guilty of conspiracy

8    to commit mail fraud.

9              The substantive underlying offense of mail fraud as an

10   object of the conspiracy in Count 2 would require the existence

11   or the creation of a scheme to defraud or obtain money or

12   property by deceiving false or fraudulent pretenses, and the

13   use of the mails to make this a federal offense in and

14   affecting interstate commerce.  You understand all of those

15   things --

16             THE DEFENDANT:  Yes.

17             THE COURT:  -- that go into making up mail fraud?

18             And you understand that the people involved in the

19   conspiracy on Count 1 and Count 2 would have to be acting with

20   the intent to defraud, not just accidently, but intentionally

21   trying to deceive and to defraud and to obtain a financial

22   advantage.  Do you understand those things about Count 1 and

23   Count 2, Mr. Shields?

24             THE DEFENDANT:  Yes.

25             THE COURT:  For the Government, is that an adequate

1    description of the elements of each offense, Mr. Particka?

2          MR. PARTICKA:  It is, your Honor.

3          THE COURT:  Mr. Shields, the maximum penalty for each

4    of these offenses is as many as 20 years of imprisonment, Count

5    1, 20 years of imprisonment, and Count 2, for a total 40 years.

6          A fine of as much as $250,000 could be imposed on each

7    offense, or if the loss amount in either achieved or intended

8    is greater than $250,000 -- now, I'm not saying that correctly.

9    It could be twice the loss amount, assuming that the loss

10   amount doubled would be greater than $250,000.  So the, so the

11   fine amount can be, as we say, $250,000 or twice the loss.  Do

12   you understand that, sir?

13         THE DEFENDANT:  Yes.

14         THE COURT:  If I impose a prison term, I would also

15   impose a follow-on status of supervised release.  You would be

16   subject to terms and conditions, behavior and travel

17   restrictions.  And of course you would be required to obey the

18   law and perform properly in that regard during supervised

19   release.

20         If you stepped out of line on supervised release and

21   committed a new offense, for example, lied about your

22   circumstances or failed to appear when told by the probation

23   officer, you could be violated from the supervised release and

24   you could be sentenced to serve additional time, even though

25   you finished your original sentence.  Do you understand that,

1   Mr. Shields?

2           THE DEFENDANT:  Yes.

3           THE COURT:  And of course, I could order you to pay

4   restitution to any victim of your conduct.  Do you understand

5   that as well?

6           THE DEFENDANT:  Yes.

7           THE COURT:  I'm also required to alert you that if you

8   were not a citizen of the United States, adverse immigration

9   consequences could follow from a plea of guilty.  You

10  understand that idea legally Mr. Shields?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Any sentence you receive is going to be

13  governed by federal law, including the Federal Sentencing

14  Guidelines.  Under the law, Mr. Shields, I must make the final

15  decision concerning your sentence.  I will be guided partially

16  by your sentencing guidelines score which combines the

17  attributes of this offense conduct with whatever criminal

18  convictions there may be in your past.  Putting your past

19  together with your present circumstances will result in

20  calculating a range of sentences from a low end to a high end,

21  not to exceed 40 years, of course, in any event.  But somewhere

22  within that range, there may be a sentence that I find

23  appropriate for you, or I might sentence you to a term less

24  than the minimum or more than the maximum of the range of

25  sentences that are possible.

```
 1              A Government recommendation for me to limit your
 2   sentence, I will consider if it's presented.  I will consider
 3   your attorney's position with respect to the imposition of
 4   sentence as well.  But I will make my own decision as to the
 5   sentencing guideline calculations, and as to the suitability of
 6   a guideline or a non-guideline sentence.  Those are all things
 7   that are within my discretion.  Do you understand that, Mr.
 8   Shields?
 9              THE DEFENDANT:  Yes.
10              THE COURT:  Your plea of guilty is a result of
11   discussions and negotiations, as we've heard.  I have not been
12   part of those discussions.  Your attorneys have discussed with
13   the Government counsel and arranged this guilty plea.  I have
14   not predicted a result.  I have not guaranteed anything.  I
15   have not approved anything in advance.  Your arrangements, in
16   other words, are with the Government, not with the Court.  Do
17   you understand, Mr. Shields?
18              THE DEFENDANT:  Yes.
19              THE COURT:  Mr. Particka, would you please summarize
20   the significant terms of the plea agreement, especially
21   anything that I may have omitted?
22              MR. PARTICKA:  Certainly, your Honor.
23              The first significant agreement between the parties is
24   that if the Court accepts this agreement and imposes sentence
25   consistent with its terms, we will not bring any additional
```

1    charges against Mr. Shields.

2         Second, as to the guidelines, the parties are agreeing

3    that the loss foreseeable by Mr. Shields was between one and a

4    half and 3 and a half million dollars for a guideline increase

5    of 16 levels.  That the offense involved ten or more victims

6    for a guidelines increase of two levels.  That the offense

7    involved sophisticated means for an increase of another two

8    levels.  That the offense involved the unauthorized transfer or

9    use of a means of identification unlawfully to obtain another

10   means of identification for a further increase of two levels.

11        And there is, I believe, a checkmark on the original

12   as to the final guideline provision.  The Government believes

13   that the defendant was a manager or supervisor in criminal

14   activity that involved five or more participants or was

15   otherwise extensive.  The defendant disputes the factual

16   applicability of that enhancement.  So as of today we are

17   agreeing to disagree with respect to that three-level increase.

18   The Government will be seeking it to apply when we discuss this

19   with the Probation Department.  Defense counsel can certainly

20   contest it.  And I believe their official position is reserving

21   an objection as to this enhancement.

22        MR. EPSTEIN:  That is correct, your Honor.

23        MR. PARTICKA:  There are additional factual

24   stipulations for sentencing purposes, specifically that Mr.

25   Shields obtained a PPP loan, that's Paycheck Protection Program

1    loan, in the name of a co-defendant and his brother, that's the

2    same person, his brother, Cortney Shields, funded by Benworth

3    Capital.  And also, there are factual stipulations in here with

4    respect to that manager or supervisor role.  I believe the

5    nature of the defense objection is as to the number of people

6    involved in the scheme, not necessarily Mr. Shields's role in

7    the scheme.

8         The parties also stipulate that the portion of the

9    overall UI fraud conspiracy's loss that was reasonably

10   foreseeable to Mr. Shields was approximately $1.9 million, and

11   that the overall Postal indemnity fraud conspiracy's loss that

12   was foreseeable to the defendant was $198,000.

13        If the Court decides not to accept the parties'

14   recommendations as to the guidelines, this is not a basis for

15   Mr. Shields to withdraw.  Likewise, if the Court decides to

16   sentence Mr. Shields not consistent with this agreement, that

17   is not a basis for him to withdraw.

18        There is no agreement as to fines.  However, there is

19   an agreement as to restitution, that is on page 16 of the

20   agreement.  The parties have agreed to the victims and the full

21   amounts of restitution.  Those victims include the states of

22   California, Michigan, Nevada, and Louisiana, the United States

23   Postal Service, and the Small Business Administration for

24   payment to Benworth Capital.  He agrees that any restitution

25   ordered is due and payable immediately.

1        There is an agreement as to forfeiture which includes

2   all property, real or personal, that constitutes proceeds

3   obtained or derived from the defendant's violations of the two

4   counts charged.  Four specific items are noted on page 18 of

5   the agreement, approximately $1,500 in U.S. currency and three

6   items of jewelry.  And the defendant agrees to assist with the

7   forfeiture process, including the entry of any orders necessary

8   to effectuate that forfeiture.

9        There is an appeal waiver, as the Court noted.  In

10  addition, there's a collateral review waiver that excludes any

11  additional attacks except for ineffective assistance of counsel

12  or prosecutorial misconduct, provided those are brought via the

13  proper channels.

14       If he's allowed to withdraw his guilty plea or the

15  conviction is vacated for any reason, the Government may

16  reinstate these charges against him, and he's waiving any

17  argument that the changes -- the charges were not timely

18  brought.

19       If his agreement is withdrawn, he's waiving his rules

20  -- rights under Federal Rule of Evidence 410, and we may use

21  any statements he makes today against him in any future

22  proceeding.

23       And that's the entire agreement between the parties,

24  your Honor.

25       THE COURT:  Mr. Epstein, you've gone over that with

1    your client?

2            MR. EPSTEIN:  Yes.  I would like to comment on one,

3    one thing that U.S. Attorney mentioned, and that is to the

4    factual basis underlying the manager/supervisor enhancement, we

5    wish to review those facts further and see how the Probation

6    Department characterizes the facts, so that is why we reserve

7    objection on, on 3B1.1(b).  So we wish to see how the Probation

8    Department characterizes the facts of this case as well.  So

9    we're not, we're not completely in agreement with what Mr.

10   Particka just characterized.

11           Thank you.

12           THE COURT:  All right.  Does that all sound correct,

13   Mr. Shields, from your perspective?

14           THE DEFENDANT:  Yes.

15           THE COURT:  And again, you've gone over this with one

16   or both of your attorneys at various times, including today; is

17   that right?

18           THE DEFENDANT:  Yes, one time today.

19           THE COURT:  And you understand that part of what

20   you're giving up is the concept of collateral attack, that's a

21   habeas corpus claim; that you're agreeing not to attack your

22   conviction either by appeal or by habeas corpus, except as may

23   be done as, if it can be properly alleged that you received

24   ineffective assistance of counsel, or that there was

25   prosecutorial misconduct in the investigation and prosecution

PLEA HEARING - 8/23/2022

24

1   of your case.  With those two exceptions, you're agreeing that

2   there shall be no collateral attack mounted after I receive and

3   approve your change of plea.  Understood?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Has anyone tried to force you or threaten

6   you in any way to get you to plead guilty?

7           THE DEFENDANT:  No.

8           THE COURT:  Has anyone done anything you think is

9   improper, illegal, or unethical in order to get you to plead

10  guilty, sir?

11          THE DEFENDANT:  No.

12          THE COURT:  And except for the statements that are on

13  the record, the terms of the agreement, the various terms and

14  conditions that you've already pre-agreed to, are there any

15  other handshake deals, anything, for example, that I have not

16  heard about that are motivating your decision to plead guilty

17  here?

18          THE DEFENDANT:  No.

19          THE COURT:  You think I've heard a fair rendition of

20  the actual agreement between you and the Government; is that

21  right?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And, Mr. Epstein, to the extent that there

24  is a Second Superseding Information and that it may, by a

25  strict application of the rules, require an arraignment, I

```
 1   would suggest that the complexity of the discussion today

 2   supersedes the need for any formal arraignment and that it can

 3   be properly waived on the record.  Do you agree?

 4            MR. EPSTEIN:  I agree.  We waive that formal

 5   arraignment.

 6            THE COURT:  Noted.

 7            MR. EPSTEIN:  Is that correct, Mr. Shields?

 8            THE DEFENDANT:  Yes.

 9            THE COURT:  And approved.

10            So you are satisfied with your attorneys, the

11   communication, the advice you've received, Mr. Shields.  And I

12   would ask if your attorney has looked into the -- attorneys

13   have looked into the case and done the things that an attorney

14   ought to do to properly prepare you for this decision.  Would

15   you agree with that statement?

16            THE DEFENDANT:  Yes.

17            THE COURT:  To the charge contained in Count 1, which

18   is wire fraud, Mr. Shields, what is your plea this morning?

19            THE DEFENDANT:  Guilty.

20            THE COURT:  And that would be conspiracy to commit

21   wire fraud.

22            THE DEFENDANT:  Guilty.

23            THE COURT:  And Count 2, the charge is conspiracy to

24   commit mail fraud.  And what is your plea this morning, sir?

25            THE DEFENDANT:  Guilty.
```

1    THE COURT:  I'm going from the factual statement that

2    is in your agreed-upon Rule 11 term sheet.  In Count 1, you are

3    saying by agreeing with these factual statements that beginning

4    at least as early as May of 2020, continuing through July of

5    2021, in the Eastern District of Michigan, that you, along with

6    Daeshawn Posey, Cortney Shields, Brittany Witherspoon,

7    knowingly and intentionally combined, conspired and agreed with

8    each other -- is this correct so far?

9    THE DEFENDANT:  Yes.

10    THE COURT:  And that you may have agreed with others

11    as well, known and unknown to the Government, to commit wire

12    fraud, that is, that you had the intent to defraud.  Did you?

13    Had the intent to defraud, Mr. Shields?

14    THE DEFENDANT:  Oh, yes.  Yes.

15    THE COURT:  And that you knowingly and intentionally

16    devised and tried, at least tried to execute a scheme to

17    defraud and to obtain money and property by means of false and

18    fraudulent statements.  Is that true?

19    THE DEFENDANT:  Yes.

20    THE COURT:  You're telling me the purpose of the

21    scheme and artifice to defraud was for the defendants to obtain

22    unlawfully state and federal unemployment insurance benefits.

23    Is that true?

24    THE DEFENDANT:  Yes.

25    THE COURT:  In executing the scheme, the defendants

 1  caused the transmission of writing signals and sounds by means

 2  of wire communication.  Is that true?

 3          THE DEFENDANT:  Yes.

 4          THE COURT:  More specifically, your statement says

 5  that you conspired to submit more than 240 fraudulent insurance

 6  claims to over 20 states and territories through the use of two

 7  Internet protocol addresses.  Is that true?

 8          THE DEFENDANT:  I don't, I don't know exactly if

 9  that's true or not.  I didn't look at the numbers to see if

10  it's true or not.

11          THE COURT:  Well, let's take the number out.  That you

12  submitted, you're agreeing that you submitted a lot of

13  fraudulent UI claims, that's un-insurance -- unemployment

14  insurance claims, to more than 40 states and territories.  Is

15  that much true?

16          THE DEFENDANT:  To more than 40 states?  No, that's

17  not true.

18          THE COURT:  Twenty states.  Twenty.

19          THE DEFENDANT:  No, twenty states.  I can't -- yes.

20  Yes, it's true.

21          MR. EPSTEIN:  The whole scheme, not just you.

22          THE DEFENDANT:  I got you.  Yes.

23          THE COURT:  Oh, yes.  This will be the actions of

24  everyone, not just the actions of you personally.

25          THE DEFENDANT:  Okay.  Yes.  I understand, yes.

1          THE COURT:  Because everybody, in a conspiracy, Mr.

2    Shields, all of the conspirators are responsible for the acts

3    of all of the other conspirators in addition to his own acts.

4    Understood?

5          THE DEFENDANT:  Yes.

6          MR. PARTICKA:  And, your Honor, if I may make one

7    additional notation for Mr. Shields's benefit, that's the

8    number of submitted claims, not the number of fully funded

9    claims.  So if Mr. Shields is questioning the number of states

10   that they got money from, that is not all 20.  There were

11   claims submitted to more than 20 states, however.

12         THE COURT:  So some were --

13         MR. PARTICKA:  Unsuccessful.

14         THE COURT:  -- caught, caught or rejected?

15         MR. PARTICKA:  That is correct, your Honor.

16         THE COURT:  Understood, Mr. Shields?

17         MR. EPSTEIN:  The Judge is asking if you understand.

18         THE DEFENDANT:  Yes.

19         THE COURT:  Okay.  Now, you're telling me in your Rule

20   11 statement as well that you used, sometimes you used personal

21   names, actual names with identifying information, but other

22   times, you used the names -- you collectively, the

23   conspiracy -- used the names and personal identification

24   information of more than ten other individuals who were unaware

25   that their identification information was being used to submit

```
 1   claims.  Is that a correct statement, sir?
 2              THE DEFENDANT:  Yes.
 3              THE COURT:  Claims were processed and funds were
 4   either loaded onto debit cards and mailed by the U.S. Postal
 5   Service to addresses controlled by the defendants.  True
 6   statement?
 7              THE DEFENDANT:  Yes.
 8              THE COURT:  And you acted, the conspirators acted
 9   within the Eastern District of Michigan from time to time; is
10   that correct, Mr. Shields?
11              THE DEFENDANT:  Yes.
12              THE COURT:  And some of these proceeds of false claims
13   were deposited directly into bank accounts controlled by the
14   conspirators; is that correct?
15              THE DEFENDANT:  Yes.
16              THE COURT:  And that money was accessed by using debit
17   cards, including Bank of America, JP Morgan Chase debit cards;
18   is that correct, sir?
19              THE DEFENDANT:  Yes.
20              THE COURT:  And cash withdrawals would be made from
21   automated teller machines throughout Metro Detroit as well as
22   in California.  True?
23              THE DEFENDANT:  Yes.
24              THE COURT:  And each of these withdrawals, you
25   understand, caused a separate interstate transmission of
```

 1   information, via wire.  Do you understand that to be the case,

 2   sir?

 3           THE DEFENDANT:  Yes.

 4           THE COURT:  And that these withdrawals were made with

 5   the intent to defraud and the knowledge of the fact that it was

 6   being done impermissibly, that is, that you were not entitled

 7   to anything having to do with these un-insurance --

 8   unemployment insurance funds.  You understand that to be the

 9   case, sir?

10           THE DEFENDANT:  Yes.

11           THE COURT:  And further, that you fraudulently

12   obtained, you, the conspiracy, as a total, or as a whole

13   obtained a total of more than $2,200,000 in unemployment

14   benefits, mainly from Michigan and California; correct

15   statement, sir?

16           THE DEFENDANT:  You said -- can you repeat that?  Can

17   you repeat that question?

18           THE COURT:  As a result of the scheme, you're

19   submitting to me in your Rule 11 agreement on page 6 of 26,

20   that you, meaning the conspiracy, fraudulently obtained a total

21   of more than $2,200,000 in benefits, mainly from Michigan and

22   California.

23           THE DEFENDANT:  Yes.  That's covering everyone,

24   correct?

25           THE COURT:  That covers all of the defendants, all of

1        your co-conspirators.

2               THE DEFENDANT:  Yes.

3               THE COURT:  Everybody's acts, not your -- it would

4        include some personal acts by you, I would imagine.

5               THE DEFENDANT:  Yes, absolutely.

6               THE COURT:  But you didn't -- almost never in a

7        conspiracy, Mr. Shields, does every co-conspirator do

8        everything or you know, join, join hands and commit a fraud and

9        then do the same thing with every other co-conspirator.

10              THE DEFENDANT:  Understood.

11              THE COURT:  There are a thousand and one different

12       ways for a conspiracy to achieve the goals of the conspiracy.

13       As long as it is done with the intent to defraud, knowingly and

14       intentionally, then that is an act of the conspiracy.

15       Understood?

16              THE DEFENDANT:  Yes.

17              THE COURT:  All right.  In Count 2, you're telling me

18       that from October of 2019 and continuing through December of

19       2019, you, you and Posey knowingly and intentionally agreed

20       with each other, as well as other people to commit mail fraud,

21       that is specifically that you, with the intent to defraud,

22       knowingly devised and executed a scheme using false and

23       fraudulent pretenses, the purpose of which was for you to

24       obtain money from the Postal Service, making use of the mail,

25       specifically conspiring to submit more than a thousand in false

 1    indemnity insurance claims in the name of more than 40

 2    individuals by mailing a number of packages that you knew would

 3    be undeliverable, and then filing a fraudulent domestic

 4    insurance claim attesting to the false statement that the

 5    package contained an item of significant value.  Did you do

 6    those things, sir?

 7              THE DEFENDANT:  Not to that, not to that --

 8              MR. EPSTEIN:  Judge, there is a change on page 7.  I

 9    would think the Court would have that.

10              THE COURT:  I do have that, and I omitted that line.

11              MR. EPSTEIN:  Thank you.

12              THE COURT:  And I was careful to omit that.  The

13    essence of it is that Shields and Posey, as well as others,

14    used self-service kiosks to mail a number of packages.

15              That's a true statement, is it, Mr. Shields?

16              THE DEFENDANT:  Yes.

17              THE COURT:  For each of the packages that were

18    undeliverable, you submitted a false insurance claim attesting

19    that, falsely, that the package contained an item of

20    significant value.  True?

21              THE DEFENDANT:  Yes.

22              THE COURT:  But in reality, the packages contained

23    nothing of any real value.  True statement, sir?

24              THE DEFENDANT:  Yes.

25              THE COURT:  And in support of the claims, you

1    repeatedly uploaded the same fraudulent proof of value

2    photograph to the Postal Service insurance claim website.  True

3    statement, sir?

4              THE DEFENDANT:  Yes.

5              THE COURT:  And for each successful claim, the Post

6    Office mailed you a check.  True statement?

7              THE DEFENDANT:  Yes.

8              THE COURT:  You two, you conspirators, mailed the

9    packages, filed the claims and subsequently cashed the benefit

10   check with the intent to defraud.  True statement?

11             THE DEFENDANT:  Yes.

12             THE COURT:  And you acted also with knowledge of the

13   fact that you were not entitled to the indemnity insurance

14   payments, true?

15             THE DEFENDANT:  Yes.

16             THE COURT:  As a result of this, you fraudulently

17   obtained more than $200,000 in indemnity insurance payments.

18   True statement?  And again, the "you" means the conspirators as

19   a whole.

20             THE DEFENDANT:  I understand.  I don't believe it was

21   over two, but yes.  Yes.

22             THE COURT:  All right.  And at least some of your

23   activities involved action in the Eastern District of Michigan,

24   Wayne County and surrounding areas?

25             THE DEFENDANT:  Yes.

1          THE COURT:  Mr. Particka, do we have a sufficient

2     factual basis or do you need to supplement something?

3          MR. PARTICKA:  The Government is satisfied as to the

4     factual basis, your Honor.

5          THE COURT:  Mr. Epstein, are you satisfied as to the

6     cautions and --

7          MR. EPSTEIN:  I'm satisfied.  Thank you.

8          THE COURT:  All right.  Mr. Shields your proposed

9     guilty plea to Count 1 and Count 2 is supported by facts that

10    you've acknowledged.  I believe you know what you're doing and

11    you're acting competently and voluntarily in giving up your

12    rights.  I am prepared to accept this agreement.  Are you sure

13    you want me to accept it and determine that you are guilty of

14    these offenses, Mr. Shields?

15         THE DEFENDANT:  Yes.

16         THE COURT:  And I do, I acknowledge, as the defendant

17    has here earlier on the record, that there may be some further

18    discussion and settling of guidelines scoring issues that are

19    not currently settled.  It's not an unusual situation.  The

20    defendant should, however, acknowledge that he knows, once

21    again, that it's my decision what the guideline range looks

22    like, how it is correctly calculated.  You're free to provide

23    input, the attorneys are invited to provide input, but the

24    judge makes the final decision.

25              You do understand, Mr. Shields?

1      THE DEFENDANT:  Yes.

2      THE COURT:  All right.  The proposed plea is being

3   supported by facts and entered knowingly and intelligently and

4   voluntarily and competently.  The plea as to Count 2, 1 and

5   Count 2 are accepted.  The defendant is found guilty of the

6   offense expressed in each of those counts, first wire fraud

7   conspiracy and mail fraud conspiracy.

8      The defendant is referred to the Probation Department

9   for the preparation of a presentence report.  And we will set

10  the sentencing date for January 5, or another convenient date

11  as that date may approach, and here in Port Huron.

12      MR. EPSTEIN:  I didn't hear the time.

13      THE COURT:  I don't think I announced a time, but it

14  will be 1:30 p.m.  Thank you.  And of course, you'll get an

15  electronic notice of that in addition to just this statement on

16  the record.

17      Turning to the question of the defendant's bond

18  status, which we discussed on the record at our previous status

19  conference in preparation for today, it is my observation that

20  the case has been reviewed upon my request by Pretrial

21  Services, and that Pretrial Services recommends that there are

22  circumstances or combination of conditions that may reasonably

23  assure the defendant's appearance and the safety of the

24  community.  Circumstances, in other words, have changed to a

25  certain extent.  And I was favorably impressed with progress

1    that had been made before our last session on the record.

2            It is my view that a $10,000 unsecured bond may be

3    properly imposed with terms and conditions to be stated.

4            On that fundamental proposition, Mr. Particka, does

5    the Government have any differing view?

6            MR. PARTICKA:  We do not object, your Honor.

7            THE COURT:  I order the defendant be released on

8    $10,000 unsecured bond with the following conditions:

9            He shall report as directed to Pretrial Services.

10           He shall reside at the bond address, with any change

11   in residence being pre-approved by the supervising officer

12   before the change takes place.

13           Number three, he shall continue his current active

14   employment.  Proof of verification to the supervising officer

15   should be provided as requested.

16           Number four, he may not apply for or enter into any

17   loan or other credit transaction without the previous written

18   clear permission of the Pretrial Services officer.

19           Number five, his travel is restricted to the Eastern

20   District of Michigan.

21           Number six, he is to avoid all contact, directly or

22   indirectly with any person who is or may become a victim or

23   witness in the investigation or the prosecution.

24           Number seven, he shall have no unapproved contact with

25   any co-defendant.

 1          Number eight, he shall participate in the location

 2   monitoring program and comply with requirements as directed,

 3   specifically home detention as directed by Pretrial Services

 4   and/or the supervising officer.  Essential and discretionary

 5   leave may be granted by the Pretrial Services as deemed

 6   appropriate.

 7          Number nine, he shall submit to location monitoring as

 8   required.  Location monitoring technology, global positioning

 9   system, GPS is recommended.  He shall pay all or part of the

10   costs of location monitoring as deemed appropriate by Pretrial

11   Services.

12          Number 10, Defendant is prohibited from operating a

13   motor vehicle without earlier -- acquiring a valid operator's

14   permit allowing him to operate on public highways.

15          Number 11, he is not permitted to possess personal

16   identification information of any other person, even

17   temporarily, and for ostensibly legitimate purposes.

18          And number 12, he is prohibited from using a computer

19   or smart phone unless the device is monitored by Pretrial

20   Services with monitoring software.  If he possesses a smart

21   phone, it must be an Android.  If he uses a computer or smart

22   phone, he must participate in the computer monitoring program

23   and abide by all rules and requirements of the program.

24   Defendant will be required to allow the installation of

25   monitoring software by Pretrial Services which will require a

```
 1   search of the computer software and hardware.  Defendant would

 2   be responsible for the cost of computer monitoring and

 3   associated software as directed by Pretrial Services.

 4          Is there any other term or condition that the

 5   Government urges or not, sir?

 6          MR. PARTICKA:  No, your Honor.

 7          THE COURT:  Any concerns about any of those things,

 8   Mr. Epstein, for you?

 9          MR. EPSTEIN:  No, your Honor.  No objection to the

10   conditions.

11          THE COURT:  All right.  We'll endorse that and hand it

12   back to the clerk.

13          Anything else for the record, for the Government?

14          MR. PARTICKA:  One bit of housekeeping, your Honor.

15   Defendant No. 1, Daeshawn Posey, was by means of clerical error

16   re-included on the caption of the Second Superseding

17   Information.  At this time, the Government would move to strike

18   -- well, move to dismiss the Counts 1 and 2 as to Defendant No.

19   1, Mr. Posey from the Second Superseding Information.

20          THE COURT:  So ordered.

21          MR. PARTICKA:  Thank you.

22          THE COURT:  Anything else for the defendant, Mr.

23   Epstein?

24          MR. EPSTEIN:  No, your Honor.

25          THE COURT:  All right.  Court stands in recess.
```

PLEA HEARING - 8/23/2022

```
 1          THE CLERK:  All rise.  Court is in recess.

 2     (Proceedings concluded, 11:14 a.m.)

 3

 4                    *            *            *

 5

 6               CERTIFICATE OF COURT REPORTER

 7

 8

 9     I certify that the foregoing is a correct transcript

10 from the record of proceedings in the above-entitled matter.

11

12 _____s/Christin E. Russell__          August 23, 2022
   CHRISTIN E. RUSSELL                   Date
13 FCRR, RDR, CRR, CSR-5607
   Federal Official Court Reporter
14

15

16

17

18

19

20

21

22

23

24

25
```